**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NEWSPRING MEZZANINE** | : | |
| **CAPITAL II, L.P.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 14-1706** |
| **v.** | : | |
| | : | |
| **HAYES, JR. et al.,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**MCHUGH, J.**                                                        **DECEMBER 9, 2014**

Defendants and cross-claimants in this case have asked me to resolve a discovery dispute

relating to control of the attorney-client privilege over communications with the law firm

Wishart Norris.  Wishart Norris was engaged for the specific purpose of executing the complex

corporate transaction that is the chewy center of this litigation.  From the record before me, it

appears that Wishart Norris had no previous relationship with any of the parties.  Wishart Norris

crafted many of the documents necessary to effect the transactions that created "New" Utilipath,

a Delaware corporation, and transferred control of "Old" Utilipath to the newly created entity

Utilipath through Utilipath Holdings.

New Utilipath, the successor corporation, is at odds with Baxter Hayes, Jr. and Utilipath

Holdings, the vehicle created to transfer ownership, ("the Baxter Parties") regarding whether the

Baxter Parties may claim attorney-client privilege over communications with Wishart Norris that

predate August 20, 2013.  There are two sets of documents at issue.  Wishart Norris turned over

one set of documents to the Baxter Parties upon their request.[1]  The second set of documents

---

[1] The legal authority upon which Wishart Norris relied is not apparent on the record before me.

consists of communications that remained on Utilipath servers after the merger and are therefore in New Utilipath's possession.

New Utilipath insists that as the survivor company in a merger, it owns the privilege over all communications with Wishart Norris, including communications prior to the date that the control of Old Utilipath passed to New Utilipath.  The Baxter Parties disagree and maintain that they have the right to assert attorney-client privilege over communications with Wishart Norris up to and including August 19, 2013.  The other owners of Old Utilipath, Jarrod Hayes and Baxter Hayes, III, contend that each document must first be reviewed individually to determine whether a privilege exists.

## I.      Discussion

Resolving this dispute requires first addressing what laws should govern the issue.  In this case, a plaintiff corporation based in Pennsylvania but organized under Delaware law has brought claims against three Florida residents, a North Carolina company, and another corporation based in North Carolina but organized under Delaware law.  There is a spider's web of claims, cross-claims, and counter-claims among these geographically diverse parties that sound in federal, Delaware, and Pennsylvania law.

Because this dispute concerns claims of privilege, I look to Federal Rule of Evidence 501, which states that federal privilege laws apply in federal claims and state privilege laws apply in state claims.  Fed. R. Evid. 501.  The Third Circuit explained in *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000), that when parties have presented both federal and state claims, courts should apply federal privilege law.  The court wrote:

> The problems associated with the application of two separate privilege rules in the same case are readily apparent, especially where, as here, the evidence in dispute is apparently relevant to both the state and the federal claims.  This court has resolved this potential conflict in favor of federal privilege law.

211 F.2d at 66.  Thus, federal privilege law must govern in this case.

A.  *Attorney-Client Privilege*

Under federal law, the attorney-client privilege affords the client the right to shield his, her, or its confidential communications with counsel from other parties.  *See In re Teleglobe Communications Corp.*, 493 F.3d 345, 359–60 (3d Cir. 2007).  Control over the privilege belongs to the client, who may be a natural person or a corporation.  *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343 (1985); *Upjohn Co. v. United States*, 449 U.S. 383 (1981).  Since a corporation is not a corporeal being, a corporation's leadership exercises control over the corporation's attorney-client privilege.  *See Weintraub*, 471 U.S. at 349.  In general, when the corporation changes its leadership, the new leaders assume control over the privilege.  *Id.*

The question here, then, is whether the Baxter Parties somehow retained control of the attorney-client privilege with respect to communications with Wishart Norris, either as former managers of the predecessor Utilipath, or as direct clients of the law firm.

The Third Circuit has addressed issues of attorney-client privilege under similar circumstances in *In re Bevill, Bresler & Schulman Asset Management Corporation*, 805 F.2d 120 (3d Cir. 1986).  *Bevill* arose out of a bankruptcy proceeding in New Jersey, where the debtor's trustee sought discovery of the contents of meetings between the debtor's officers and their corporate counsel.  In its disposition of the case, the Court of Appeals concluded that the corporate officer's could not assert an individual attorney-client privilege, although it did so primarily on waiver grounds.  For purposes of this case, *Bevill* is instructive in two respects.

First, it held that the party who asserts the existence of attorney-client privilege has the burden of establishing that the privilege exists.  805 F.2d at 126.

The Court of Appeals also endorsed the district court's adoption of a five-part test for evaluating an assertion of a personal attorney-client privilege with respect to communications with corporate counsel.  *Id.* at 123.

At least one later decision from this court reads *Bevill* as having adopted that five-part test as the governing standard in cases such as this.  In *In re Sunrise Security Litigation*, 130 F.R.D. 560 (E.D. Pa. 1989).  I am not as certain that the Third Circuit intended to require the application of such a five-prong recovery in every case, rather than simply holding that it was an appropriate method of analyzing the issue under the facts of that particular case.  Assuming, however, that such a test applies, the individual parties here seeking to invoke the privilege must establish that:

> when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities … [and] must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise.

805 F.2d at 123.

With these requirements in mind, I turn to an analysis of the various assertions of privilege and to the specific precedent outside the Third Circuit cited by the parties.

B.  *Identifying Wishart Norris' Client*

The Baxter Parties insist that they retain the right to assert attorney-client privilege over communications with Wishart Norris pre-merger because they were the sellers of a controlling interest in Old Utilipath.  In support of this position, they analogize the current situation to *Tekni-Plex v. Meyner and Landis,* 674 N.E.2d 663 (Ct. Ap. N.Y. 1996).  In that case, a New York state court applying New York law found that the former sole shareholder and CEO of a corporation

4

retained control over the attorney-client privilege after a merger and transfer of control, but only with respect to communications that related to the negotiation of the merger. The court reasoned that the shareholder and CEO was in an adversarial posture towards the company that was absorbing his own, and was entitled to confidential communications with his long-time lawyer about the negotiations.

In contrast, New Utilipath characterizes Wishart Norris exclusively as counsel for the corporate entities Old and New Utilipath. New Utilipath argues that Wishart Norris represented Baxter, Jarrod, and Lindon only as managers of Old Utilipath. Consequently, according to New Utilipath, control over Wishart Norris communications passed to New Utilipath after the merger. New Utilipath analogizes to *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLP*, 80 A.3d 144 (Del. Chancery Ct. 2013). In *Great Hill*, a Delaware state court applying Delaware law held that a successor corporation took control of the attorney-client privilege as to all communications between the merged corporation and its attorneys. The successor corporation's control extended even over communications pre-merger that related to merger. New Utilipath asserts that here, as in *Great Hill*, the law firm represented only the corporation, and New Utilipath should have control over the attorney client privilege as to all communications with Wishart Norris before and after the merger.

The most useful point of departure is the contract of representation whereby Wishart Norris was retained. The retention letter stated that it related to "this Firm's representation of Utilipath, LLC ('the Company')." The letter also cautioned, "The advice and communications which we render on the *Company's behalf* are not intended to be disseminated to or relied upon by any other parties without our written consent" (emphasis added). The signature line identified Utilipath LLC and identified Jarrod Hayes as a "manager." Jarrod Hayes did not separately sign

as an individual, and neither did his father, Baxter Hayes, Jr., or brother, Baxter Hayes, III.  The Baxter Parties seize on the reference to Wishart Norris representing "your interests in Utilipath" in the letter's opening paragraph as evidence of a broader representation.  However, that phrase appears in the introduction of the letter and is followed by repeated clear statements that Wishart Norris was undertaking representation of the "company," rather than the individual owners or directors.  In fact, the letter was addressed only to Jarrod Hayes, not his father or brother, and he accepted the representation in the capacity of a corporate officer.  In fact there is no ambiguity in the scope of representation set forth in the agreement retaining counsel:  Utilipath was the sole client.

The Baxter Parties next look to one of the transaction documents, specifically Section 2.2.4 of the Redemption Agreement, to argue either that the parties always believed Wishart Norris represented the Baxter Parties personally, or that the parties agreed through the Redemption Agreement to give the Baxter Parties control of the pre-merger privilege.  The section states:

> Utilipath will deliver or cause to be delivered, an amount equal to (A) the Closing Consideration, *minus* [in addition to several other amounts] (D) the fees and expenses of Wishart, Norris, Henninger, and Pittman, P.A., counsel to the Seller Parties

Redemption Agreement § 2.2.4.  It is clear the section's purpose is to deduct costs for the transaction from the payout to Jarrod, Lindon, Baxter, and Holdings.  The suggestion that this one choice of phrase, used as a shorthand label in allocating costs, was intended to re-write the retention agreement, or transfer potentially important rights, defies belief.  It is not at all clear that this isolated clause, given the context and all the other evidence, shows Wishart Norris directly represented Baxter, Lindon, Jarrod, or Holdings.  And it is a leap worthy of an Olympian long-jumper to argue, as the Baxter Parties do, that the clause amounted to consideration for an

express agreement by New Utilipath "ceding the attorney-client relationship to the Seller Parties." Baxter Parties Reply 5. The Baxter Parties read much more into one subordinate clause, "counsel to the Seller Parties," within this fee-distribution section, than I am willing to read.

I also find nothing in Wishart Norris' actions that indicate it was representing any of the Baxter Parties as individuals in addition to representing the corporations. Further supporting my conclusion is the fact that Baxter, Jarrod, and Lindon Hayes had retained their own personal counsel.

I decline to follow *Tekni-Plex* in giving the Baxter Parties control over pre-merger communications. The case was decided under New York law. *See In Re Hechinger Investment Co. of Del.*, 285 B.R. 601 (D. Del. 2002) (distinguishing *Tekni-Plex*). It is also distinguishable on its facts, because in *Tekni-Plex,* the law firm whose communications were at issue had represented the merged corporation's owner on personal matters for many years. *Tekni-Plex*, 89 N.Y. 2d at 128. The personal representation continued through the negotiation and execution of a merger. *Id.* In contrast, in the situation before me, Wishart Norris was explicitly retained by Old Utilipath to carry out the Utilipath transaction, and other lawyers were retained to personally represent the parties in the transaction. Under *Bevill*, the individuals asserting the privilege have a specific burden, which they have failed to meet.

Because Wishart Norris represented the corporation, the corporation's post-merger owners took control of the corporation's attorney-client privilege. *Weintraub*, 471 U.S. at 348 (all the parties agreed "that when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well"); *Great Hill*, 80 A.3d 144.

7

II.      **Conclusion**

The request by "New" Utilipath and Baxter Hayes, Jr. (Baxter Parties) that I enter an order declaring that they control the attorney client privilege as to all communications with Wishart Norris prior to August 20, 2013 will be denied.  Utilipath LLC's request for an order that they control the attorney client privilege as to Old Utilipath's communications with Wishart Norris will be granted.  Having failed to establish that they are entitled to assert a personal privilege, the request of Baxter Hayes, III and Jarrod Hayes that an individualized document review be conducted will be denied.

In reaching this conclusion, I do not decide whether the Baxter Parties waived their attorney client privilege with respect to documents left on Utilipath servers after the Sale of Control.

Furthermore, this order is without prejudice as to any parties' rights to assert privilege as to specific communications for personal legal advice from Wishart Norris, should such a document exist. To the extent that counsel for the Baxter Parties, Jarrod, or Lindon may have shared information with Wishart Norris or other counsel as part of the 'community of interest' carrying out the merger of Utilipath and sale of control, while such communications may not be withheld from Utilipath, I do not decide whether the 'community of interest privilege' shields such communications from parties other than Utilipath.

An appropriate order follows.


_____/s/ Gerald Austin McHugh
United States District Court Judge

8