## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NEWSPRING MEZZANINE** | : | |
| **CAPITAL II, L.P.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 14-1706** |
| **v.** | : | |
| | : | |
| **BAXTER MCLINDON HAYES, JR. et al.,** | : | |
| **Defendants.** | : | |

**MCHUGH, J.**                                                     **DECEMBER 23, 2016**

### MEMORANDUM

This case presents a tangled web of tort and contract claims arising out of a complex commercial transaction gone awry. Before me now are Motions for Summary Judgment on no fewer than 35 claims, crossclaims, and counterclaims. Having taken what appears to be a shotgun approach to litigating this matter, the parties now support their conflicting versions of events with contradictory evidence drawn from a massive record. The briefing in this case, while voluminous, is notable for its paucity of citation to controlling legal authority, particularly with respect to choice-of-law issues. In the absence of dispositive legal arguments, and confronted with what appear to be genuine disputes of material fact, I am hard-pressed to dispose of these claims on summary judgment. Although the weight of evidence in this case seems to favor the Plaintiff, a jury must resolve the bulk of the hotly contested disputes. For the reasons set forth below, of the 35 counts reviewed, 29 survive for trial.

Because there is no issue of public importance in this case, I write solely for the benefit of the parties, and a recitation of the underlying facts of this case is omitted.[1]

## I.   <u>Standard of Review</u>

All parties have moved for summary judgment on numerous claims.  Summary judgment is appropriate only where "there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a);  *Celotex Corp. v. Catrett*,  477 U.S. 317, 322 (1986).  The vehement disagreement between the parties about who said what to whom, and with what intent, makes this case particularly unsuited to resolution by summary judgment.  Nonetheless, as to certain discrete issues, some parties have advanced legal arguments sufficient to foreclose relief under a claim or theory.  In those places, summary judgment will be granted.

When confronted with cross-motions for summary judgment, I "'must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'"  *Schlegel v. Life Ins. Co. of N. Am.*, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting Charles A. Wright et al., 10A *Federal Practice and Procedure* § 2720 (3d ed. 1998)).  Accordingly, I will address each party's allegations against the other in turn.

## II.   <u>Motions for Summary Judgment on the Complaint</u>

NewSpring has moved affirmatively for summary judgment on the seventeen claims contained in its Complaint (ECF No. 1), contending that the evidence is so overwhelming that there is nothing for a jury to decide.  Needless to say, it is a rare case where a party with the

---

[1] In line with the parties' practice, I will sometimes refer to Defendant Utilipath, LLC, as "New Utilipath"; Defendants Baxter McLindon Hayes, Jr., and Utilipath Holdings, Inc., as the "Baxter Parties"; Defendants Baxter McLindon Hayes, III, and Jarrod Tyson Hayes as the "Hayes Brothers"; Defendants Baxter McLindon Hayes, III, Jarrod Tyson Hayes, Baxter McLindon Hayes, Jr., and Utilipath Holdings, Inc., as the "Hayes Parties"; Defendant Baxter McLindon Hayes, Jr., as "Baxter"; and the three Hayes Defendants as "Individual Defendants."

burden of proof prevails with such a motion, *Shager v. Upjohn Co.*, 913 F.2d 398, 403 (7th Cir.

1990), so it is difficult to fathom why NewSpring considers such a motion a good use of judicial

resources.  Defendants in turn have also moved for summary judgment on thirteen of these

seventeen claims (ECF 263, 266). Upon consideration of NewSpring's Motion (ECF No. 269),

the Hayes Brothers' Motion (ECF No. 263), and the Baxter Parties' Motion (ECF No. 266) and

responses and replies thereto (ECF Nos. 275, 277, 284 & 290), I conclude as follows:

      A.  <u>Counts I and II:  Violations of the Securities Exchange Act of 1934</u>

      These claims hinge on disputed material facts.  Plaintiff alleges that Defendants made

intentionally inaccurate representations about the financial health of Utilipath, LLC, in the course

of their sale of a security—an ownership interest in Utilipath—to Plaintiff.  Defendants state that

no such misrepresentations were made.  The parties have provided extensive evidence, largely in

the form of emails between Plaintiff, Defendants, and various accountants and consultants

involved in the transaction.  This evidence is contradictory and unclear:  some communications

suggest that Defendants intentionally withheld or misrepresented information, while others

suggest that Defendants were transparent in sharing objective information, failing only to share

with Plaintiff their personal anxieties and family disputes about the company's strength.  The

evidence may favor NewSpring, but to the extent that Defendants can be precluded from arguing

their interpretation of the facts.

      The Hayes Brothers argue that this claim cannot succeed as a matter of law, because the

interest transferred to Newspring was not a security.  However, whether the interest is a security

depends upon the extent to which NewSpring intended to manage Utilipath.  This is also a

contested factual issue as to which each party has produced evidence, and therefore summary

judgment as to these claims must be **DENIED.**

B.  Count III:  Violation of Section 503 of the Pennsylvania Securities Act

The facts underlying this claim (and numerous others) echo the facts underlying Counts I and II:  Plaintiff alleges that Defendants aided and abetted Old Utilipath (which they owned and managed) in intentionally misrepresenting its financial health in order to sell Utilipath to Plaintiff.  Defendants vehemently deny making any representations.

Defendants contest Newspring's standing to bring this claim.  Citing *Penturelli v. Spector Cohen Gadon & Rosen*, 640 F. Supp. 868, 871 (E.D. Pa. 1986), they claim that section 503 does not provide NewSpring a cause of action—that section 503's aiding and abetting claim is available only to a party which has already been found liable of securities fraud and which seeks indemnification from its aiders and abettors.  I am persuaded by my colleague Judge DuBois that *Penturelli* cannot be reconciled with the plain language of the statute and is further called into question by the Third Circuit's decision in *McCarter v. Michigan*, 883 F.2d 196 (3d Cir. 1989). *Fox Int'l Relations v. Fiserv Sec., Inc.*, 490 F. Supp. 2d 590 (E.D. Pa. 2007).  I therefore hold that a plaintiff other than someone already adjudged liable of securities fraud *can* bring an action against the aiders and abettors of the principal who committed the  fraud.

Defendants further argue that Plaintiff cannot bring an aiding and abetting claim without also bringing an underlying direct claim against the entity that Defendants allegedly aided and abetted.  This argument contradicts the basic theory of aiding and abetting, which creates independent liability for those who materially help tortfeasors and criminals achieve their ends. Although Defendants claim that the statute "on its face" limits liability to those cases where suit is brought against the alleged principal, the statute appears to say nothing of the sort—indeed, it makes clear that aiders and abettors are "also liable jointly and severally with and to the same extent as such person."  70 Pa. Stat. and Cons. Stat. Ann. § 1-503.  Accordingly, Plaintiff may sue Defendants under section 503 of the Pennsylvania Securities Act.  Nonetheless, whether

Plaintiff can succeed on this claim is a question for the jury.  Summary judgment as to this Count will be **DENIED**.

      C.  <u>Count IV:  Violation of the Delaware Securities Act</u>

Defendants contend that the Delaware Securities Act does not govern the relationship between the parties.  Plaintiff has offered nothing to the contrary.  Summary judgment will be **GRANTED** and this claim will be dismissed.

      D.  <u>Counts V and VI:  Unjust Enrichment Claims</u>

Plaintiff alleges that it unjustly enriched Defendants in two ways:  (1) that it overpaid Defendants for Utilipath because Defendants misrepresented Utilipath's worth; and (2) that on the evening before closing, Individual Defendants arranged for $229,445.73 to be transferred from Utilipath's accounts into three accounts of their own.  Whether Defendants' enrichment was unjust is a question for the jury, to be determined by the evidence presented about each party's knowledge and intent.

The Hayes Brothers claim that unjust enrichment is unavailable to Plaintiff as a remedy because the parties' relationship is governed by a contract. NewSpring correctly points out that this equitable theory is pleaded only in the alternative should the contract claim fail.  The Hayes Brothers further argue that the claim is barred by an exclusive remedy clause.  *See* Redemption Agreement § 5.7 (ECF 263, Ex. 9).  Having reviewed the contract, I construe it as limited to Article V, and claims for indemnification, which this is not.  In addition, even if this clause were applicable, as NewSpring points out, the contract contains a "carve-out" from that clause for "case[s] of fraud."  *Id*.  The parties disagree—here and elsewhere—about whether the carve-out pertains to only fraud *claims*, or whether it pertains to claims, like this one, based upon alleged fraudulent behavior.  I find the purported

distinction between fraud claims and claims based on fraudulent conduct meaningless, and would therefore not dismiss this claim even if I were persuaded the exclusive remedy clause applied..[2]

The Baxter Parties claim that NewSpring's unjust enrichment claim must fail because NewSpring did not actually pay the Baxter Parties—New Utilipath paid them with NewSpring's money.  Unjust enrichment is an equitable doctrine and I am aware of no requirement that the enrichment be direct, rather than indirect.  NewSpring clearly did in some respect "enrich" Defendants in this case, even though its money moved briefly through New Utilipath in the course of the transaction.  Consequently, the Baxter Parties' argument does not foreclose a jury determination on this claim.  Summary judgment will be **DENIED**.

E. <u>Counts VII and VIII:  Violation of the Uniform Fraudulent Transfer Act</u>

NewSpring alleges that Defendants, in selling Old Utilipath to NewSpring and remitting payments to themselves on the day before closing, made securities transfers with the intent to defraud NewSpring and in furtherance of a fraudulent scheme.  This claim rests on the same contested factual issues as NewSpring's other claims.

Defendants argue that NewSpring has not stated these counts as proper claims, because it has not specified the jurisdiction governing the counts.  I denied Defendant's Motion to Dismiss after concluding there was "no material difference between the potentially applicable laws."  (ECF No. 74, p.2).  Defendants still have not established that the potentially governing statutes differ, and therefore this argument is insufficient to merit dismissal of NewSpring's claims.  Summary judgment will be **DENIED**.  If, however, NewSpring pursues this claim at trial, it must, no later than the Final Pretrial Conference, fully brief the controlling law.

---

[2] The Hayes Brothers also allege that this claim cannot succeed because it would require piercing the corporate veil.  Whether NewSpring can pierce the veil is a factual inquiry that must be determined by the jury, and  it has pointed to evidence to support such a theory.

6

F.   Count IX:  Common Law Fraud

This claim hinges on the parties' fundamental disagreement about whether Defendants made intentional misrepresentations in the course of selling Utilipath, LLC, to Plaintiff.  Because factual findings are necessary to deciding the claim, summary judgment will be **DENIED**.

G.   Count X:  Negligent Misrepresentation

This claim, too, hinges on whether misrepresentations were made, and whether Defendants acted carelessly with respect to the truth or falsity of their statements.  The Hayes Brothers argue that this claim is preempted by the Exclusive Remedy clause of the Redemption Agreement.  For the reasons discussed above in Section II.D, this argument fails.

The Baxter Parties, however, raise a more persuasive argument:  that the economic loss doctrine bars this claim.  Specifically, they contend that because the negligent misrepresentation alleged in Count X arises from the same alleged misconduct as NewSpring's contract claims, discussed below in Section II.I, this claim is precluded by Pennsylvania's "gist of the action" doctrine, in that purely economic losses are not recoverable in tort.

In Pennsylvania, "tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement."  *Bilt-Rite Contractors, Inc. v. Architectural Studio*, 581 Pa. 454, 475 866 A.2d 270, 283 (2005).  Where the "gist" of a claim is that the alleged wrongdoer broke a promise made in the course of making a deal, the claim must be brought as a breach of contract rather than a tort.

The gist of the action doctrine does not bar all of NewSpring's tort claims—this is a case in which both tort and contract claims are proper.  It can also be said that where a duty exists, one can be held liable for negligent misrepresentation in the absence of a contract.  But the wrong that NewSpring complains of here exists only because the parties entered a contract.  Accordingly, it must be expressed as a contract claim.  Summary judgment will be **GRANTED** as to Count X.

H.  Counts XI, XII, and XV:  Indemnification Claim

Various contracts signed by the parties entitle each party to indemnification in the event that the other has breached the contract's warranties and representations.  Here, NewSpring has asked the Court to find that it is entitled to indemnification from Defendants because their alleged misstatements constitute this type of breach.

The parties have briefed the question whether an independent adjudication of liability must occur before an indemnification right may be established.  This question is irrelevant, however, because like NewSpring's other claims, this claim hinges on contested material facts.  A jury must first decide whether Defendants made misrepresentations to Plaintiff, and whether Plaintiff relied on those representations and suffered damages.  Summary judgment will accordingly be **DENIED**.

I.  Counts XIII and XVI:  Breach of Contract Claims

This claim, like NewSpring's other claims, rests upon NewSpring's assertions that Defendants made material misrepresentations during the sale of Utilipath.  As discussed above, these assertions are factually contested, and a reasonable jury could find for either party.  Summary judgment will be **DENIED**.

J.  Counts XIV and XVII:  Rescission Claims

NewSpring has moved for summary judgment entitling it to rescission of the Stock Purchase Agreement and the Loan Agreement through which it purchased Utilipath.  Defendants have not moved for summary judgment on this claim, *see* ECF Nos. 263 & 266, but in their response to NewSpring's Motion (ECF No. 276, p. 51), they have persuasively argued that rescission is impossible due to the complex nature of the transaction and to Utilipath's post-deal demise.

I cannot grant summary judgment in favor of a party that did not move for it.  But I reject NewSpring's position because of the practical difficulties of fashioning a remedy where the transaction in question took place years ago between two entities that no longer exist.  Summary judgment will be **DENIED**.

### K.  Count XVIII:  Declaratory Judgment

Finally, NewSpring has moved for a declaratory judgment that Defendants are liable to it under the indemnification clause of the Redemption Agreement.  NewSpring's entitlement to such relief depends on whether Defendants are so liable depends on whether Defendants made misrepresentations amounting to a breach of contractual warranties and representations.  This contested factual matter must be submitted to a jury.  Summary judgment will therefore be **DENIED**.

## III.  **Motions for Summary Judgment on the Individual Defendants' Counterclaims**

NewSpring moves for summary judgment (ECF No. 268) on all Counterclaims asserted by the Baxter Parties (ECF No. 205) and the Hayes Brothers (ECF No. 95) (collectively, Counterclaim Plaintiffs).  Upon consideration of these Counterclaims, NewSpring's Motion, and the responses and replies thereto (ECF Nos. 276, 279 & 290), for the reasons detailed below, the Motion will be **DENIED**.

### A.  Counts I and II:  Negligent Misrepresentation and Fraudulent Inducement

Counterclaim Plaintiffs allege negligent misrepresentation and fraudulent inducement on the part of NewSpring and its members, Hobman and Christensen.  The pervasive theme of the defense is that NewSpring 's economic interest was in earning fees for structuring the transaction, and that having been paid, it was, at best, content to let the newly created entity fail, or at worst, to then pillage its remains through litigation.  While most of the eleven allegations

9

that Counterclaim Plaintiffs offer in support of Counts I and II appear deficient, at least one

creates a triable issue of material fact.[3]  Counterclaim Plaintiffs claim that Hobman and

Christensen, acting on behalf of NewSpring, promised that New Utilipath would secure bonding.

Counterclaim Plaintiffs further allege that these assurances induced them to sell their control

interest in Utilipath for promissory notes and shares in New Utilipath, rather than cash.

According to Counterclaim Plaintiffs, NewSpring, Hobman, and Christensen negligently,

recklessly, or deliberately failed to secure the promised bonding, a decision that led to New

Utilipath's failure.

　　　NewSpring denies these allegations and claims that responsibility for securing post-

closing bonding remained with Counterclaim Plaintiffs.  NewSpring also argues that neither

Christensen nor Hobman can be held personally liable for any actions undertaken within their

scope of employment.  The parties appear to disagree over whether Pennsylvania or Delaware

law governs the issue of personal liability.  NewSpring supports its position by citing to

Pennsylvania law.  Counterclaim Plaintiffs respond by appealing to Delaware's "personal

participation doctrine," which imposes liability on corporate officers "for torts which they

'commit, participate in, or inspire, even though the acts are performed in the name of the

corporation.'"   Hayes Brothers Resp. (ECF No. 276) at 60 (quoting *Brasby v. Morris*, No. C.A.

05C-10-022-RFS, 2007 WL 949485, at *8 (Del. Super. Ct. Mar. 29, 2007)).

　　　Regrettably, neither party addresses this apparent choice-of-law dispute.  But even

assuming for sake of argument that NewSpring is right and Pennsylvania law controls,

Christensen and Hobman can still, in theory, be held liable in their individual capacities for

negligent or fraudulent misrepresentations.  Like Delaware, "Pennsylvania law recognizes the

---

[3] Recognizing that there is at least one triable issue should not be misinterpreted as a global
ruling on what might constitute relevant and admissible evidence at trial.

participation theory as a basis of liability.  The general, if not universal, rule is that an officer of a

corporation who takes part in the commission of a tort by the corporation is personally liable

therefor." *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 621, 470 A.2d 86, 90 (1983) (citation

omitted).  Moreover, contrary to NewSpring's argument, officers can be held personally liable

for tortious conduct occurring within the scope of employment:

> [W]hether appellees acted within or beyond the scope of their authority as
> corporate officers is irrelevant.  The fact that an officer is acting for a corporation
> also may make the corporation vicariously or secondarily liable under the doctrine
> of respondeat superior; it does not however relieve the individual of his
> responsibility.

*Id.* at 620 n.5, 470 A.2d at 89 n.5 (citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d

Cir. 1978)).

Because Pennsylvania and Delaware law both permit tort recovery against individual

officers and because Counterclaim Plaintiffs offer sufficient evidentiary support for their

allegations of negligent misrepresentation and fraudulent inducement, I find that a reasonable

jury could find for Counterclaim Plaintiffs on Counts I and II.  NewSpring's Motion for

Summary Judgment will be **DENIED** as to these counts.

B.  Count III:  Breach of Contract

The Baxter Parties (but not the Hayes Brothers) allege that NewSpring breached the

terms of the Utilipath Company Agreement.  As with Counts I and II, most of the Baxter Parties'

arguments in support of Count III appear weak, but at least one creates a triable issue of material

fact.  The Baxter Parties argue that NewSpring breached the implied covenant of good faith and

fair dealing by using its power majority shareholder to cause New Utilipath to withhold financial

information requested by Baxter.  NewSpring maintains (at ECF No. 268, p. 49) that the

Agreement is "completely silent" regarding Baxter's right to inspect New Utilipath's financial

information.  According to NewSpring, this silence is fatal to the Baxter Parties' theory of breach because under Delaware law, the implied covenant may only fill gaps with respect to existing contractual rights or obligations but cannot be used to create new contractual rights.  The Baxter Parties offer nothing to rebut this argument, but the terms of the Company Agreement itself undermine NewSpring's position.  Section 9.2 of the Company Agreement (at ECF No. 40-4, Ex. 15, p. 28) requires that New Utilipath allow members like Baxter to inspect company financial records, "provided the Board has not reasonably determined that such Member is a Competitor of the Company."  Moreover, section 7.5 of the Company Agreement (at ECF No. 40-4, Ex. 15, p. 22) also specifically notes that "each Member shall have the duty to act in accordance with the implied contractual covenant of good faith and fair dealing."

In light of the Agreement's express provision of inspection rights, I find that the Baxter Parties have assembled sufficient evidence to support a reasonable jury in finding that NewSpring breached the implied covenant by withholding from Baxter New Utilipath financial data.  NewSpring's Motion for Summary Judgment will be **DENIED** as to Count III.

C. Count IV:  Aiding and Abetting Breach of Fiduciary Duty

Counterclaim Plaintiffs argue that by failing to secure bonding, New Utilipath's executive team breached their fiduciary duty to New Utilipath and its members.  Counterclaim Plaintiffs further allege that NewSpring knowingly participated in this breach by, among other things, hiring and retaining an incompetent management team, structuring New Utilipath's debt in a way that made obtaining bonding more difficult, and encouraging New Utilipath to pursue a business strategy that did not involve bonded work.  NewSpring again argues that Counterclaim Plaintiffs, not New Utilipath's officers, were responsible for securing bonding.  Thus, according

to NewSpring, the failure to obtain bonding was not a fiduciary breach and Count IV must be dismissed.

As an initial matter, the Agreement (at ECF No. 40-4, Ex. 15, § 7.7(b)) makes clear that New Utilipath officers owed fiduciary duties of loyalty and care to New Utilipath and its members. Moreover, under Delaware law, which the parties seem to agree governs this claim, conscious indifference to a known duty to act can constitute a breach of the fiduciary duty of loyalty. *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006). As noted in the discussion of Counts I and II, I find that the Baxter Parties have assembled enough evidence for a reasonable jury to find that New Utilipath was responsible for securing bonding. The Baxter Parties have also sufficiently supported their claim that New Utilipath's executive team knew of this obligation and deliberately or recklessly disregarded it. Finally, there is sufficient circumstantial evidence in the record to support a finding that NewSpring knowingly participated in this breach. Accordingly, NewSpring's Motion for Summary Judgment will be **DENIED** as to Count IV.

D. Count V:  Tortious Interference with Existing or Prospective Relations

Counterclaim Plaintiffs maintain that NewSpring tortiously interfered with their contractual relationship with New Utilipath by preventing New Utilipath from honoring its obligations under the terms of various agreements. Among other things, Counterclaim Plaintiffs argue that NewSpring acted in bad faith by causing New Utilipath to wrongfully withhold $1,000,000 of the purchase price that was placed in escrow in connection with the sale of control. NewSpring claims that the escrow funds were withheld only after Counterclaim Plaintiffs' alleged misstatements about Old Utilipath's financial health came to light following closing. Counterclaim Plaintiffs counter that NewSpring's allegations of fraud are frivolous and

that NewSpring caused New Utilipath to withhold escrow funds and to sue Counterclaim Plaintiffs in order to coerce them into surrendering their contractual rights.  As with Counts I and II, the parties seem to disagree over whether this claim is governed by Pennsylvania or Delaware law, but again, neither party briefs the choice of law issue or explains whether it materially affects the disposition of this claim.  In any case, I find that a triable issue of fact exists as to whether New Utilipath was justified in withholding escrow funds.   Summary judgment will be **DENIED**.

> E.  Count VI:  Control Person Liability Pursuant to Section 20(a) of the Securities Exchange Act of 1934

Counterclaim Plaintiffs argue that NewSpring, acting as a controlling person of New Utilipath within the meaning of section 20(a) of the Securities Exchange Act, caused New Utilipath to violate Rule 10b-5.  As discussed in reference to Count I of the Baxter Parties' Crossclaims, *infra*, although the evidence is thin, I find that a triable issue of material fact exists as to whether New Utilipath violated Rule 10b-5.  Moreover, I find that the record supports Counterclaim's argument that NewSpring exercised sufficient control over New Utilipath to expose it to control person liability for New Utilipath's actions.  NewSpring's Motion for Summary Judgement will be **DENIED** as to Count VI.

> F.  Count VII:  Minority Oppression

The Baxter Parties (but not the Hayes Brothers) claim that NewSpring exercised its power as a majority owner of New Utilipath systematically to exclude Baxter from participating in company business both as an officer and as a minority shareholder (as the owner of Holdings). NewSpring claims Baxter is merely upset because New Utilipath's other officers chose not to follow Baxter's recommendations, a decision NewSpring argues is protected under the business

judgment rule.  Baxter argues that the business judgment rule gives way here because NewSpring acted in bad faith by freezing him out of New Utilipath and by denying him the benefits of his minority ownership stake in the company.  Because there is evidence in the record to support both parties' positions, summary judgment will be **DENIED**.

G.  Count VIII:  Liability Pursuant to Rule 10b-5

Counterclaim Plaintiffs allege that NewSpring induced them to purchase shares of New Utilipath by intentionally (or recklessly) omitting or misrepresenting material information. NewSpring responds that Counterclaim Plaintiffs fail to establish that it engaged in fraudulent conduct, with the result that Count VIII fails.  As noted in reference to Count II, although the evidence is far from compelling, I find that there exists an issue of material fact as to whether NewSpring fraudulently induced Counterclaim Plaintiffs to enter into the sale transaction. Accordingly, NewSpring's summary judgment will be **DENIED** as to Count VIII.

H.  Count IX:  Control Person Liability Pursuant to Section 20(a) of the Securities
    Exchange Act of 1934 (Against Hobman and Christensen)

Finally, Counterclaim Plaintiffs argue that Christensen and Hobman controlled NewSpring and should therefore be held jointly and severally liable for its Rule 10b-5 violations. According to Counterclaim Plaintiffs, Christensen and Hobman were culpable participants in NewSpring's 10b-5 violations by virtue of the fact that they were the source of NewSpring's alleged misstatements.  Moreover, Counterclaim Plaintiffs argue, Hobman and Christensen's status as leaders of NewSpring's deal team meant that they exercised sufficient indirect control over NewSpring itself to bring them within Section 20(a)'s scope of liability.  Having already concluded that a triable issue of material fact exists as to whether Hobman and Christensen were personally responsible for NewSpring's alleged misstatements, I also find that Counterclaim

Plaintiffs have produced sufficient evidence to support their Section 20(a) claim.  Summary

Judgement will therefore be **DENIED** as to this count as well.

IV.     <u>New Utilipath's Motion for Partial Summary Judgment on the Baxter Parties'</u>
        <u>Amended Crossclaims and Hayes Brothers' Crossclaims</u>

        New Utilipath has moved for partial summary judgment (ECF No. 265) on the Baxter

Parties' Amended Crossclaims (ECF No. 43) and the Hayes Brothers' Crossclaims (ECF No.

95).  Specifically, New Utilipath has moved for summary judgment as to Counts I (Fraud under

the Exchange Act and Rule 10b-5), II (Fraudulent Inducement), VIII (Invasion of Privacy), and

IX (Defamation) of the Baxter Parties' claims, and Counts I (Fraudulent Inducement), V and VI

(Indemnification Claims) of the Hayes Brothers' claims.  I have reviewed New Utilipath's

Motion in addition to the responses and replies thereto (ECF Nos. 274, 278 & 282).  I address

these claims below.


        A.   <u>Baxter Parties' Counts I and II:  Violation of the Securities Exchange Act; Fraudulent</u>
             <u>Inducement and Hayes Brothers' Count I: Fraudulent Inducement</u>

        In allegations that mirror their first and second counterclaims against NewSpring, the

Hayes Parties assert that New Utilipath made false and misleading statements about how it

planned to conduct business its business post-closing.

        New Utilipath claims there is no evidence that it made any misrepresentation to the

Baxter Parties, and that even if there was such a misrepresentation, there could be no reasonable

reliance.  New Utilipath claims this is because at the time the alleged misrepresentations were

made, New Utilipath was owned by the Hayes Parties, and the Hayes Parties cannot base fraud

claims on misrepresentations they made to themselves.  The Baxter Parties (who largely

incorporate the arguments of the Hayes Brothers, which are at ECF No. 274) claim there is a

16

dispute of fact about "written representations" that were "made in connection with" the Sale of Control and the offer and sale of Holdings Promissory Notes.  New Utilipath argues in reply that to the extent the Baxter Parties' claims are non-contractual, they are claims about misrepresentations that *NewSpring*, not New Utilipath, made, and so there are no viable fraud claims against New Utilipath.

Although I note the Baxter Parties' briefing largely lacks citation to actual disputed material facts in the record, and it is a very close question, I find there is a sufficient issue of material fact on Counts I and II to survive summary judgment.  Specifically, the Baxter Parties (again through incorporation of the Hayes Brothers' arguments at ECF No. 274) claim "there is evidence that even prior to the transaction closing, the new chairman of the Board of Utilipath, Steve Hobman, had hired a consultant to undermine" the Baxter Parties and Hayes Parties "in every possible way."  From a review of the exhibits, during a critical period Mr. Hobman appears to be wearing two hats, one NewSpring and one New Utilipath, and the structure of the transaction was such that there was an inherently close relationship between the two entities. Out of an abundance of caution I will therefore deny summary judgment as to Counts I and II of the Baxter Parties' Cross-Clams.

B.  Baxter Parties' Counts VIII and IX:  Invasion of Privacy and Defamation

Because the Baxter Parties have withdrawn these claims (ECF No. 278, p. 7 n.2), New Utilipath's Motion will be granted as to these claims.

C.  Hayes Brothers' Counts V and VI: Indemnification

These claims seek indemnification in connection with claims brought against the Hayes Brothers in this action and in related actions in other jurisdictions.  Both claims draw on largely the same sources, including the indemnification provisions in Article VI of the Amended and

Restated LLC Agreement of Utilipath, LLC (Aug. 19, 2013) (ECF No. 40-4, Ex. 15, pp. 23–24). Article VI of that Agreement provides that New Utilipath will indemnify certain persons, including the Hayes Brothers, for "any liability, loss or damages incurred . . . by reason of any act performed or omitted to be performed . . . in connection with the business" of New Utilipath. This provision covers attorneys' fees in some situations.  But it also contains an exception if the persons seeking indemnity engaged in fraud or willful misconduct.  Here, for the reasons set forth above, there is a sufficient disputed issue of fact regarding whether fraud occurred that makes summary judgment as to Counts V and VI unavailable at this time.

**V.      Hayes Parties' Motions for Summary Judgment on Utilipath's Cross-Claims**

The Hayes Parties have moved for partial summary judgment (ECF Nos. 264 & 267) on New Utilipath's Amended Crossclaims (ECF No. 46).  Specifically, the Hayes Parties move for summary judgment as to Count III (Breach of Contract as to Technology and Systems) and Count VII (Negligent Misrepresentation).  As stated in its Letter dated December 19, 2016, New Utilipath does not oppose these Motions and will not be pursuing these claims.  Summary judgment on Counts III and VII will therefore be granted.

　/S/ GERALD AUSTIN MCHUGH
Gerald Austin McHugh
United States District Judge